UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| PHILLIP S. GOVERO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:19-CV-00006-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the applications of Plaintiff Phillip S. Govero ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

## I. Factual Background

At the hearing before the ALJ on December 14, 2016, Plaintiff testified as follows. (Tr. 36-54). He worked for many years up until August 2014 at a job that involved exposure to grain dust. (Tr. 37). He left his job because had trouble breathing, and his doctors told him he had COPD and could no longer be around grain dust. (Tr. 37-38).

Plaintiff has problems with shortness of breath; it hits him out of the blue, even at rest. (Tr. 45). This has been an issue since he was diagnosed with COPD. (Tr. 46). It happens about three times a day for anywhere from 15 minutes to two hours, and when it happens, he has to sit down. (Tr. 46). When he is not having one of these periods of shortness of breath, he can walk about 50 to 75 yards, and then he can hardly breathe and has to stop and relax for a little bit. (Tr. 46). Plaintiff also has congestive heart failure and occasionally has pain in his chest. (Tr. 46). Once every two weeks, he has heaviness in his chest that feels like a tractor trailer truck sitting on his chest; this makes it hard to breathe. (Tr. 47). When he has the chest pain or shortness of breath, he uses an albuterol inhaler. (TR. 47). Plaintiff testified that his feet swell pretty much every day, going up to his knees. (Tr. 48). When this happens, he gets in his recliner and elevates his feet. (Tr. 49). This is accompanied by itching. (Tr. 49). His stomach has swelling once a month or so, and it could last all day. (Tr. 49). When that happens, he takes Lasix to get rid of the fluid. (Tr. 50).

Plaintiff also has diabetes that has not been under control, even though he takes his medications and tries to follow an appropriate diet. (Tr. 41). His blood sugars go high enough that he has symptoms of nausea and blurred vision about three or four times a week. (Tr. 43). When that happens, he has some insulin and sits down for two to four hours. (Tr. 43). He also has numbness and tingling in his fingers once or twice a week for 30 minutes to an hour. (Tr. 43-45).

Plaintiff gets headaches once or twice a week, which seem to be independent of his blood sugar issues. (Tr. 44). When he has them, he lies back and closes his eyes for two or three hours. (Tr. 44).

The week before the hearing, Plaintiff had a sleep study, and he testified that he was told his results were "terrible" and his doctors are trying to get him on a sleep apnea machine (Tr. 39-40). He cannot sleep through the night without interruption; he wakes up two or three times a night. (Tr. 52). Plaintiff spends four or five hours a day in his recliner. (Tr. 50). He naps every day for 30 minutes to an hour. (Tr. 50).

Plaintiff does not have side effects from his medication. (Tr. 52). Plaintiff drives daily and does not have to stop frequently (Tr. 37). Plaintiff can sit comfortably for about two hours before he needs to stand or lie down, and he can stand comfortably for about 20 minutes before he can sit or lie down. (Tr. 53). When Plaintiff goes grocery shopping, he gets around the store by walking very slowly. (Tr. 53). There are weeks that he sits in the truck while his wife goes in the store, because he does not have the breath to walk around. (Tr. 53-54)

With regard to Plaintiff's medical records, the Court accepts the facts as presented in the parties' respective statements of fact. The Court will cite to specific records in the discussion below as necessary to address Plaintiff's arguments.

## II. PROCEDURAL BACKGROUND

On January 15, 2015, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since August 28, 2014. (Tr. 178, 185). He later amended his alleged onset date to October 11, 2015. (Tr. 212). His applications were initially denied. (Tr. 97-102). On August 11, 2015, Plaintiff requested a hearing by an Administrative Law Judge (ALJ) (Tr. 105-09). On December 14, 2016, the ALJ held a hearing on Plaintiff's claims. (Tr. 31-68). On March 23, 2017, the ALJ

issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 7-25). On November 30, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at

4

611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since October 11, 2015, the amended alleged onset date; that Plaintiff had the severe impairments of a-fibrillation, chronic heart failure, type 2 diabetes, hypertension, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea, and obesity; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 12-13). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform work that does not require more than occasional climbing on ropes, ladders, or scaffolds and no more than frequent climbing on ramps and stairs. He should avoid even moderate exposure to extreme cold, humidity, work hazards such as unprotected heights and being around dangerous moving machinery, and pulmonary irritants such as gas, fumes, odors, dust, and workspace with poor ventilation.

(Tr. 14).

At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work as a farm hand. (Tr. 18). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative jobs such as bagger (Dictionary of Occupational Titles ("DOT")

No. 920.687-018, 25,000 jobs nationally), hand packer (DOT No. 559.687-074, 100,000 jobs nationally), and garment sorter (DOT No. 222.687-014, 20,000 jobs nationally).

## V.  DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the ALJ did not give sufficient weight to the opinion of Plaintiff's treating physician, Dr. Onik, and because the ALJ's RFC finding was not supported by substantial evidence, including medical evidence.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

7

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Remand is Required to Obtain Medical Evidence to Support the RFC

The Court first considers Plaintiff's argument that the RFC finding is not supported by substantial evidence and is not supported by "some" medical evidence addressing Plaintiff's physical ability to function in the workplace. The Court agrees.

"It is the ALJ's responsibility to determine [a claimant's] RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the claimant's] own description of [his or her] limitations." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). However, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by 'some medical evidence' of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)); s*ee also Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) ("A claimant's RFC is a medical question, and some medical evidence must support the RFC determination."). While the claimant "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment," *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013), "[a]n ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Nader v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). *See also Sultan v. Barnhart*, 368

F.3d 857, 863 (8th Cir. 2004) (an ALJ may be required to develop the record by, among other things, recontacting medical sources or ordering consultative evaluations, but only if the available evidence does not provide an adequate basis for determining the merits of the disability claim).

The central question in this case is whether substantial evidence supports the conclusion that Plaintiff can perform the requirements of "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.9867(b), with some additional environmental and climbing restrictions. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) & 416.9867(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). The RFC in this case also included a limitation to only "occasional climbing on ropes, ladders, or scaffolds" and "no more than frequent climbing on ramps and stairs," as well as various environmental limitations. (Tr. 14).

After review of the record, it is not apparent to the Court how the ALJ reached the conclusion that Plaintiff is capable of performing the walking, standing, and climbing requirements set forth in the RFC despite his heart conditions, COPD, sleep apnea, and related breathing and stamina problems. The only evidence in the record that bears directly on the question of whether Plaintiff can perform these activities indicates that he cannot. Plaintiff himself testified that since he was diagnosed with COPD, he has periods of shortness of breath several times a day, for up to two hours at a time, and that when he has such periods, he has to sit down. (Tr. 45-46). Additionally, Plaintiff testified that he can only walk for 50 to 75 yards before he can "hardly

9

breathe" and has to stop and relax. (Tr. 46). He also has congestive heart failure associated with pain and heaviness in his chest that make it hard to breathe. (Tr. 47). These statements are supported by the third-party statements of his spouse and his friend, who indicated that Plaintiff gets out of breath, tired, and worn out quickly when walking or doing other physical activities. (Tr. 239, 255-56).

Consistent with the above evidence, Plaintiff's treating physician, Dr. Jan Onik, opined, *inter alia*, that Plaintiff can stand and walk (with normal breaks) for less than two hours in an eight-hour day; needs the opportunity to shift at will from sitting or standing/walking; needs to lie down at unpredictable intervals; and can never twist, stoop, crouch, or climb stairs or ladders. (Tr. 401). Dr. Onik opined that these limitations were caused by Plaintiff's COPD, atrial fibrillation with chest heaviness, congestive heart failure, 30% ejection fraction, changes in heart rate, and tendency to lose balance. (Tr. 401). Dr. Onik also opined that Plaintiff would be absent from work more than four days per month, would be off-task 25% or more of the day because his symptoms are severe enough to interfere with his attention and concentration; and would need to take 20- to 30-minute breaks during the day at an unknown frequency due to muscle weakness, chronic fatigue, pain/paresthesias and numbness, and shortness of breath. (Tr. 404). The opinion of Dr. Onik is supported by at least some of the treatment notes and findings in the record, including evidence showing that Plaintiff complained to his treatment providers of chest pain or pressure (Tr. 338, 381, 437-38, 464, 525, 552, 641), shortness of breath or dyspnea (Tr. 339, 464, 552, 641), palpitations (Tr. 339, 552), and fatigue or decreased energy (Tr. 387, 525); evidence that Plaintiff was hospitalized on two occasions during the relevant period for chest pain or shortness of breath (Tr. 406-32, 434-89); a finding of a left ventricle ejection fraction of 30% (Tr. 595); a chest X-ray showing moderate congestive heart failure (Tr. 516); a pulse oximetry test showing that Plaintiff

10

qualified for nocturnal oxygen under Medicare guidelines (Tr. 374); a sleep study showing obstructive apneas (Tr. 650-52); findings of irregular heart rate and rhythm at times (Tr. 513); and a six-minute treadmill walk test, conducted in September 2014, showing that Plaintiff's dyspnea went from a 0 to a 9 after four minutes of walking and that his "dyspnea was quite severe at maximum exercise." (Tr. 365).

The ALJ gave "little weight" to Dr. Onik's opinion, finding it extreme, based on Plaintiff's subjective complaints, and not supported by evidence of improved heart and lung function later in the relevant period, largely normal exams, and daily activities. (Tr. 18). Defendant argues that the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Onik's opinion.[2] Defendant also argues that the ALJ properly discounted Plaintiff's subjective complaints after consideration of the relevant factors. The Court acknowledges that the ALJ gave some good reasons, supported by the record, for discounting at least some of the limitations in Dr. Onik's opinions and for discounting some of Plaintiff's testimony. However, even assuming, *arguendo*, that the ALJ properly discounted Dr. Onik's opinion and properly discounted Plaintiff's subjective

---

[2] Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (internal quotation marks omitted).

complaints, the Court is left to consider what evidence *does* support the RFC assessment. It is not clear.

Defendant suggests that the RFC assessment is supported by the opinion of the consultative examiner, Eddie Runde, M.D., which the ALJ gave "partial weight." (Tr. 17, 384). Dr. Runde conducted a physical examination of Plaintiff and noted that "while in the clinic, he has no dyspnea at rest or upon exertion (though he reports it historically)." (Tr. 384). Dr. Runde opined that "[f]rom a physiatric standpoint, [plaintiff] is able to sit, stand, walk, lift, carry, handle objects, hear, speak, and travel without difficulty." (Tr. 384). However, Dr. Runde also noted that "[w]ithout objective findings of COPD, specific restrictions cannot [be] recommended at this time" and that "his hypertension and possible coronary artery disease may result in some limitations." (Tr. 384). These statements indicate that Dr. Runde believed he did not have sufficient information to offer an opinion on what limitations Plaintiff would have due to his heart and lung impairments. Indeed, the ALJ acknowledged that Dr. Runde's opinion did not account for Plaintiff's newer diagnoses of chronic heart failure and atrial fibrillation. (Tr. 17). Moreover, the fact that Plaintiff did not have dyspnea upon exertion during an office visit does not address the extent to which he would experience dyspnea while standing and/or walking for extended periods during a work day.

Defendant also argues that the ALJ's decision in supported by the evidence showing that Plaintiff had a normal gait, full ranges of motion, full strength, and no sensory deficits. (Tr. 16, 384, 423, 471, 527, 531, 571, 578, 586, 593, 642). However, those examination findings do not address the central issue here—whether Plaintiff's heart problems, COPD, and related stamina and breathing problems limit his ability to perform the standing and walking requirements of light work.

12

Defendant further argues that the RFC is supported by examination findings showing Plaintiff had often clear lungs with good air movement, even and easy respiratory effort with no use of accessory muscles, normal breath sounds with no rales or rhonchi, and regular heart rate and rhythm, evidence of normal pulmonary function tests, and evidence that Plaintiff's abnormal ejection fraction of 30% later improved and normalized. However, it is not clear to the Court how the ALJ came to the conclusion that these heart and lung findings translate into an ability to perform the standing, walking, and climbing requirements of light work—particularly in light of the contrary opinion of Plaintiff's treating physician and the results of a treadmill test showing that Plaintiff had "severe dyspnea after only a few minutes of walking." There is no medical source that explained how these findings demonstrate that Plaintiff can perform the standing, walking, and climbing requirements of light work, nor did the ALJ attempt to explain it. The Court agrees with Plaintiff that the ALJ may have been may have been impermissibly "playing doctor" by drawing his own inferences from these medical findings, which is not permissible. The Eighth Circuit has cautioned that "[t]he ALJ may not simply draw his own inferences about plaintiff's functional ability from medical reports." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks omitted); *see also Pate–Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (ALJs may not "play doctor" by "mak[ing] their own independent medical findings") (quotation marks omitted).

Defendant further argues that the ALJ's RFC determination is supported by Plaintiff's reports regarding his daily activities. Plaintiff reported that he was able to prepare simple meals (Tr. 228), mow the lawn with a riding mower (Tr. 228); drive without having to stop (including the 75-minute drive to the hearing) (Tr. 37, 229); spend time with others at a coffee shop; go grocery shopping with his wife for 20 to 30 minutes at a time; and watch television. (Tr. 229).

These activities, however, do not involve a significant amount of standing or walking. Thus, although these activities suggest that Plaintiff may have the ability to do *sedentary* work, neither the ALJ nor the Commissioner explains how they support a finding that Plaintiff can perform the standing and walking requirements of *light* work.

The Court is mindful of its obligation to defer to the ALJ's assessment of the evidence when the ALJ's assessment is supported by substantial evidence and lies within the "available zone of choice." *See, e.g.*, *Hacker v. Barnhart*, 459 F.3d 934 (8th Cir. 2006); *Partee*, 638 F.3d at 863. On the facts of this case, however, the Court cannot say that the RFC is supported by "some medical evidence," nor can the Court determine whether the RFC is supported by substantial evidence on the record as a whole. Thus, this case must be reversed and remanded for further consideration. *See Combs*, 878 F.3d at 646. On remand, the ALJ may need to further develop the record regarding Plaintiff's ability to function, perhaps by obtaining the services of a consultative examiner.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of March, 2020.